Go ahead, Counselor. Go on, guys. It's on your side, though. Go ahead. Thank you. Good morning, Your Honors. My name is Michael Johnson. I represent New Dallas National Union Fire Insurance Company, Fisberg, Pennsylvania. I'd like to reserve five minutes for rebuttal. The Bay of Pleas Court, this case is on appeal from a summary judgment in the District Court. It's a de novo review. The issue presented is whether there's a triable issue of fact as to the notice information that was provided to make the assigned primary insurance carrier executive risk, whether the information provided to the executive risk is different from the information provided to the excess carrier in Genesis. And as I understand it, the District Court allowed you a period of discovery to investigate if there's other evidence. Correct. As I understand it, the only conditional evidence discovered was a two-fold conversation between, I call it ERII and BACNA, which did not reveal that BACNA gave ERII any of the required information under the policy necessary to constitute an E-Notice of Circumstances. That's the only new evidence. The new evidence, well, I prefer to call it the additional evidence. I'll call it additional. Whether it's additional or new, there's only one part, a telephone conversation. Correct. There was a two-fold telephone conversation. Mr. Nese testified it could have been more than one, but there was at least one telephone conversation where the parties, the parties being Mr. Nese and Mr. Jorgensen, who was maintenance broker, insurance broker with APD, discussed how they're really saying, then, is this identical? Given the only additional information, you don't find that it isn't the same, then why isn't the consumer law of the case applicable here? As the district court decided, there was clearly additional evidence provided to executive risk. Executive risk clearly relied on that additional information to accept E-Notice of Circumstances at the request of its insurer, which is different from what just stood. It's not just that there was additional information. The question is whether there's a tribal issue of fact as to the content of that additional information. Does the insurance policy require that the E-Notice of Circumstances, the information, be conveyed in writing? It does. So how do you get by that by saying, do you need additional information that came in a phone call? Well, there's a waiver issue, and there are tribal issues, in fact, on waiver as well. And the waiver issue specifically is whether the executive risk waived the requirements in Section 50-C of the policy that the information be provided in writing. Because they accepted the information that was given orally by Mr. Jordanston. They acted upon the information by accepting the Notice of Circumstances, which is really indicated to the insurer that they believed the information given was sufficient under the policy. Then when the claims came in later, they reviewed the policies, reviewed the file notes, and made a decision that, in fact, those claims were the subject of the Notice of Circumstances. So if the case didn't apply in summary judgment, then why wouldn't the question as to whether or not that constituted a waiver be a question of law that the court can properly explain? But there are factual issues in regards to the intent of the parties, whether there was a waiver. There are factual issues based on which, right? You had the opportunity to conduct a discovery. Right. And the discovery disclosed the content of this additional discussion. And it doesn't become then, for our review, or the district court's review in summary judgment, whether or not it's a matter of law that constituted a waiver. But it's not a matter of law. It's just a dispute as to whether. But you're saying there's a dispute. Well, no, the evidence shows. So your answer to thinking about this question is the facts are not disputed. Disputed. The facts are there. Now we have to apply whether a waiver applies. I think the facts are disputed. How are they disputed? There are instances that can be drawn that the information given today to an executive was sufficient to satisfy the Specificity C requirements of Rule 15C. Okay. There's evidence. The jury could draw inferences based on Mr. Nace's experience, based on the evidence of what discussion was filed, and based on the actions that were taken by the party. And those facts could give rise to inferences that 15C of the policy was actually satisfied by the verbal information given by Mr. Jorgensen. And then the question is that that issue is the primary issue. And the question is whether it has to be in writing. In the last number of years, you're suggesting there's a question of fact. If the facts are the facts, but one can argue the facts mean this or the facts mean the other, then one cannot determine that on summary judgment. Is that what you're saying? That's exactly right, Your Honor. There are instances. Okay. What's your best case on that? Welfare and health revisions. I've never seen such a case. If the facts are undisputed, it seems to me at that point we decided what it is the waiver can apply to and what it can't. The disputed facts specifically are whether the information required under 15C was conveyed in the telephone conversation to Mr. Nace, and we know what was conveyed, and therefore we can apply the doctrine. But we don't know what was conveyed because Mr. Nace has forgotten what specifics were conveyed during that telephone conversation. Mr. Jorgensen says the law of the case applies. No, Mr. Jorgensen provided additional information. That's not disputed. The information given to the executors was not identical with the information given to Genesis. That is clear. And there's a trial issue as to whether that additional information that he says by Section 15C. The trial issue is what additional information was provided. The jury could infer that additional information was given that satisfies Section 15C and that the writing requirement of Section 15C was waived based on executive risk conduct in accepting notice, telling us to ensure that the information was sufficient, essentially, and then acting on it to place the lawsuit in the 2003 policy period. And this is a clear trial issue. The Steelworkers v. Phelps Dodge case is a very helpful inference case. In that case, there was an issue of whether there was conspiracy, and the court talked about drawing inferences from the behavior of the parties. And crystal to that case was the fact that the information, the direct evidence they had was so probative on the inferred facts. Here, the evidence that we have, the direct evidence, is very profitable out of the satisfaction of Section 15C because the proof is in the pudding. When the claims came in in 2005, Mr. Nason, who admits us in his declaration, reviewed those claims, reviewed his file notes, reviewed the policy, and determined that those claims were the claims that were discussed on the notice of circumstances. This information was provided by Mr. Jorgensen in 2004, on November 9, 2004. So the direct evidence is very probative on the facts that need to be inferred and that can't be inferred, which give rise to the tribal issue. I mean, there's a long history of this council on argument. I think I know what your argument is here. Any other part of this you want to argue? Yeah, let me talk a little bit about the pre-judgment interest question. Although we feel that pre-judgment should be reversed in the matters of humanity for Helen and the facts that are used, 10% pre-judgment interest is not appropriate under Section 3287A. 3287A has two requirements. One is that the entity which is concerned should be able to participate. Let me step back a little bit. Isn't the right to which Genesis becomes subrogated the right which is defined under the insurance policy between MAGNA and the National Union? Correct. And so at that point, there is a contractual right. It's the right between MAGNA and the National Union because they are taking up the subrogation of MAGNA. That's correct. And so therefore, there is a contractual right to which they have succeeded, and therefore, 10% is applicable. That's their position. Well, I'm trying to say I know that's their position. I don't know how to get around it. The issue, as we see it, is with regard to the personal requirement there. Well, then I just went in to respond to my question. There's no question they're the subrogoer. There's no question this claim is brought because of the subrogation. There's no question the only reason we got you in here is because MAGNA is suing you, only they are not doing it. Genesis is, and they're trying to get you to pay. Correct. And that means it's a contractual right at 10%. Correct, but the issue is when the right to pre-judgment is declared. Well, I understand all this other, but once I decide when the right happened or when it doesn't happen or whether these preconditions ought to get you off, once determining you're going to pay, then I'm back to the subrogated interest in this contract. The subrogated interest in question, that is 10%, but we believe that the right did not test until the loss was moved from the 2003. But that doesn't have anything to do with whether I give you interest on a pre-judgment interest. What I'm going to give you pre-judgment interest on is whether there's a contract or there isn't. And when I read this, it's very carefully read. I mean, I've been in your shoes before. This is a subrogated right thereafter. Right, but the right didn't accrue. Whether it didn't accrue has nothing to do with whether you get interest or not. Right, but my point is the judge awarded pre-judgment interest starting in 2008. Well, now we're on a mixed problem. You said you were only on the 10%. If we want to look at the time period, okay, the California courts have uniformly interpreted the date of approval for pre-judgment interest as the time that the amount of the damages become certain or capable of being made certain, not the time when liability to pay those amounts is determined. That's Evanston v. OEA. Right, the Evanston case, if you look at the decisions and sites for that, we're all going to have that one in mind now because I'm going to reserve a couple of minutes to rebuttal. If you look at those cases, though. You can do what you want to do. If my question isn't important, go ahead and sit down. No, I'm going to answer it. I'm not trying to be angry. I apologize. In the case of Sipha and Evanston, not a one of them talks about the vesting requirement. They talk about the certainty requirement under 3287A, and I don't see how I can say in these years the damages were not as certain as of the date the district court determined. Right, but the question is vesting, and the right didn't vest until the loss was moved, and the executive press didn't go in or told the court that they would not move this until the court decided, which was very early in 2013. I'll reserve a minute. May I please have the floor? My name is Glenn Nager, and I'm counsel for Magna Insurance. Judge Fischer, if we could, I'd like to start with your question. The policy requires a notice of circumstance in order to trigger coverage to include specified facts in writing, and the only writing that was provided by Magna to executive arrest was the patent infringement case. That very patent infringement complaint is the complaint that this court held, and the first appeal in this decade-old case, was legally insufficient to trigger coverage under the identical policy language in justice. The only argument that's been offered today is waiver, but the argument that's being made about waiver is not based upon the actual notice of circumstance that was recognized. If we look at the appendix pages 628 and 629, it doesn't say we acknowledge a notice of circumstance based upon all information written or all provided. It says we will accept the complaint as a notice of circumstance. So there was no waiver of the right to have the information communicated in writing. And if we look at the August 23, 2005 letter in which you take at risk citing and less place coverage under the 2003-2004 policy, the reasoning was that the securities actions, which were not filed until 2005, arose out of and were related to a patent infringement complaint. There was no suggestion made by executive risk that they were triggering the coverage because of information orally provided. So there was a written requirement. It wasn't that all the case is not legally sufficient. There was no waiver. And the argument that's being made that nonetheless we can infer, a jury could infer that the information was orally communicated has never been claimed by the insured or by executive risk. This is a complete fabrication made by National Union to continue to try to deprive Magma and its suborgy of the right to the insurance that Magma paid for. It paid all of these insurance companies premiums. And all of the other insurance companies participated in settling the claims when they were later filed. It's just National Union who is trying not to. Unless the court has further questions, I'm going to turn it over to Mr. Lawson for questions. If there are no further questions. Good morning. My name is Lewis Lawson. I'm with Lawless Counsel for Genesis Insurance Company. My client, Genesis, has been on a long policy, California law, and encourages insurers, even if they believe there is no coverage under their policy, when asked by an insured to contribute to a settlement, to go ahead and do it. Insurance is subject to a reservation of the right to include it from the responsible party. That is what my client did in 2008. And we continue here today. Our effort to be repaid is for having determined in 2010, and my client did not vote the item. I'll just make a few short points here and quick comments. The first is that the primary argument that National Union is advancing today is an equitable argument with waiver, and also it's so expensive to sell. There are a number of defense that their waiver is not an argument. We detail them in the brief. My point that is so obvious that I cannot go without mentioning it is National Union seeks to employ equity, to have this foreign-to-equity, to lock in a mostly inequitable result. The assumption of their waiver argument is that even if the notice was insufficient, asked an executive risk, and the claim properly should be viewed as having been made when it was filed during their policy period, and even if they otherwise would have owed coverage, because of the course of this case, they should now not be obligated to live up to their contractual obligation, and instead either act on which their continuous coverage or genesis, which is court-assured to determine does not owe the money, should end up bearing that financial burden they want. So the bottom line is that it's not insurance. Well, they wouldn't have been a big part of it. Correct. That's correct. They wouldn't have been a big part of it. The second point I would make is this. With respect to the pre-judgment interest, the law is very clear, and if it still is the case, that the U.S. liability does not fall when the law starts to run on pre-judgment interest. The issue in this case, 2005 and certainly from 2006 when we filed it, was something which policy here applies. As the liability issue in this case has now been determined by the district court, I don't have any questions. So there is no time for further questions. Thank you. I'd like to read from Mr. Bates' declaration in 2008. He said, In June 2005, Executive Risk received a letter from Mr. Jorgensen enclosing a copy of the complaint filed for the securities class action. This was one of the later claims that were placed in the 2003 policy period. And he says, I quote, I reviewed Executive Risk's files and determined that the securities class action arose from the circumstances that were the subject of the notice of potential claim that I discussed with Mr. Jorgensen on or about November 9, 2004. That's from ER of 1195. He admitted that when the claims came in, it drew a dead argument to the last court. It wasn't an issue before the last court, Your Honor. The issue here is whether or not the primary carrier, Executive Risk, had coverage in trying to understand what argument was made previously. Now, this is no multiplier. This is a new argument. And it's an argument that the court in Genesis 2 directed the trial court to decide. The court decided not to superjudge them. But there are triable issues based on the evidence, based on the unexcused fact that there was additional evidence given to Executive Risk that was not given to the excess carrier in Genesis. Now, the trial court erred by saying that the notice was identical in the law. The case applies. It's very clear the notice was not identical. There was additional information given that Mr. Nace was very experienced and relied on to accept the notice and to place the losses ultimately in the 2003 policy period. This is an issue that used to be decided by a jury. In particular, Mr. Nace's credibility is very important and cannot be addressed or decided on a superior judgment. He was an insurance coverage litigation attorney for ten years before joining Executive Risk. He said he had handled over 25 of these claims before he accepted this notice of circumstance as being sufficient. He's continued with Executive Risk. In his most recent declaration in 2013, he's now promoted to vice president. So that credibility issue, along with just the insurances given, can be drawn from the facts of this discussion. He's sentenced to loss of the notice, placement of loss in the 2003 policy period. And Executive Risk's representation in the court and all the parties that have lost one were made in the 2003 policy period, unless and until this court decided otherwise. That's the issue before the court. It's a tribal issue. In fact, it's clearly spelled out in our briefs. The facts have shown it. I think we've got it. Thank you very much. This case, 1516999, is adjourned. And this court is adjourned.
judges: Fisher, Schroeder, N.R. Smith